**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RELIANCE STEEL PRODUCTS COMPANY, Respondent.**

**No. 19623.**

United States Court of Appeals Fifth Circuit.

Aug. 5, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Melvin Pollack, Atty., Stuart Rothman, Gen. Counsel, Leo N. McGuire, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

C. V. Stelzenmuller, Mark L. Taliaferro, Birmingham, Ala., for respondent, Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., of counsel.

Before TUTTLE, Chief Judge, and POPE * and JONES, Circuit Judges.

JONES, Circuit Judge.

The National Labor Relations Board, adopting the findings and conclusions of the trial examiner, found that the respondent, Reliance Steel Products Company, violated Sections 8(a) (3), (2) and (1) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., by discharging or laying off nine employees on November 28, 1960, in order to discourage its employees from joining District 50, United Mine Workers of America, and to encourage them to retain Local 372, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, as their collective bargaining representative. The Board also found that respondent assisted Local 372 in violation of Sections 8(a) (2) and (1) of the Act by authorizing Local 372 to recall the nine men on the condition that they repudiate District 50, by urging its employees to attend Local 372 meetings, and by paying them for, or allowing them to make up, time spent in such attendance. Finally, the Board found that the respondent assisted Local 372 in violation of Section 8 (a) (1) of the Act by threatening its employees with economic reprisals if they selected District 50 as their bargaining representative in a scheduled Board election on February 3, 1961, by interrogating employees concerning their attendance at a District 50 meeting held a few days before the election, and by soliciting employees to attend such meeting and report back what had transpired.

The Board issued its customary cease and desist order and directed that the discharged and laid-off employees, subsequently rehired by the respondent prior to the Board's order, be made whole for time lost. The Board further ordered that the election in favor of Local 372 be set aside and that respondent withhold recognition of Local 372 as the bargaining representative of its employees and refuse to give effect to its contract with Local 372 unless and until such union be certified by the Board. 135 N.L.R.B. 730. The Board seeks enforcement of its order.

The struggle between the two unions took place at respondent's Cottondale, Alabama, plant, which had opened in the fall of 1959 for the manufacture of steel gratings. The seven or eight employees then on the payroll signed up with Local 372 on December 16, 1959, and a six-year contract was entered into with the respondent. By mid-November, 1960, when the number of employees at the Cottondale plant had increased to over forty, District 50 began an organizational campaign to oust Local 372 as the bargaining representative of the employees. One West, a supervisor of respondent until January 3, 1961, testified to several phone calls and discussions between himself and the vice president of the company about the advisability of firing the leaders of the District 50 movement. On November 28, 1960, at a time when the respondent's business and the work load at the plant were slacking, nine men were discharged or laid off purportedly for unsatisfactory work or lack of work. Eight of those let go comprised the nucleus of the District 50 organizational effort. Two days later, on November 30, the plant manager conferred with the Local 372 business agent and authorized him to recall all of the men discharged or laid off on November 28. No material increase in the work available at the plant had occurred during the interim. A

* Of the Ninth Circuit, sitting by designation.

meeting of Local 372 was held that evening, and all of the employees then on duty were allowed to attend on company time. Recall of those discharged was announced at the meeting, conditioned on the signing by thirty-three of those present of a petition accepting Local 372 and its contract with the respondent. On December 1, 1960, all those recalled returned to work.

An election was scheduled at respondent's Cottondale plant by the Board for February 3, 1961. There was testimony at the hearing that, during the month preceding such election, respondent's supervisory personnel warned the employees that if District 50 won the election, the plant would be moved to Texas and they would be out of jobs. On January 26, 1961, the parties entered into a stipulation for certification upon consent election in which they agreed, inter alia, that all procedure subsequent to the conclusion of counting ballots should be in conformity with the Board's rules and regulations. Hearing and notice, direction of election, and the making of findings of fact and conclusions of law by the Board prior to the election were expressly waived. On the eve of the election the respondent urged employees to attend a meeting of Local 372. Employees on the night shift were allowed to leave their work to attend the meeting. One of the respondent's supervisors was at the meeting. At the meeting an official of Local 372 warned that the plant would be moved if the District 50 union won the election. The balloting resulted in a 24 to 21 victory for Local 372. The Board has not yet certified the election result.

On February 14, 1961, District 50 filed objections to the election and charges of unfair labor practices, alleging that the respondent had unlawfully assisted Local 372 by closing its plant on the eve of the election and directing its employees to attend the meeting of Local 372, and had further violated Sections 8(a) (3), (2) and (1) by "other acts and deeds of the employer's agents." The objections to the election were rejected by the Board as untimely, having been filed after the

five-day period of limitation, fixed by the Board's rules for the filing of such objections, had run. The field examiner who investigated the charges filed by District 50 reported back to the union on February 14, 1961, suggesting certain amendments to its charges. On March 8 and 13, 1961, District 50 filed amended charges which formed the basis for the complaint in the present enforcement proceeding of the Board, bringing in for the first time allegedly illegal conduct of the respondent prior to the January 26, 1961, stipulation agreement of the parties. Included in the amended charges were allegations based on the discharges and layoffs of November 28, 1960. The Board issued a complaint against the respondent on March 21, 1961, alleging violations of Sections 8(a) (3), (2) and (1) covering conduct extending from November, 1960, to February, 1961.

At the hearing before the trial examiner, the respondent moved to dismiss the complaint on the ground that the original charge, filed with District 50's objections to the election, was insufficient and that the amended charges had been improperly solicited by the Board, acting through the trial examiner, and were therefore void. To support this position, the respondent served a subpoena duces tecum on the field examiner who had made the original investigation, seeking to compel his presence as a witness and seeking to require him to produce all portions of the Board's manual relating to the soliciting of such amendments. The trial examiner quashed respondent's subpoena, refusing a request that the field examiner be allowed to testify and to produce the sections of the manual in question. Respondent's motion to dismiss the complaint for lack of jurisdiction, renewed at the close of the hearing, was denied.

The trial examiner concluded that the violations as charged had occurred and recommended that the election be set aside and that the respondent be ordered to compensate those employees discharged or laid off, to cease and desist from its assistance to Local 372, and to withhold

recognition of Local 372 and its contract until it should be certified by the Board. The Board adopted the findings, conclusions and recommendations of the trial examiner. The Board seeks enforcement of its order.

[1] The respondent attacks the validity of the Board's order on several grounds. First, respondent questions the sufficiency of the evidence on the record as a whole to support the findings of the trial examiner. We are unable to say, from our study of the record, that there is no substantial evidence, on the record as a whole, to support the findings as to the illegal discharges or lay-offs, or as to the active support and assistance given by the respondent to Local 372.

The respondent also attacks the order in its entirety on the ground that the Board lacked jurisdiction, having gone beyond its proper authority in soliciting the charges which formed the basis for the amended complaint. The field examiner, respondent argues, took the original charge filed by District 50 as an authorization to range far afield of the specific allegations contained therein in an effort to uncover some conduct on the part of the respondent more plausibly within the prohibitions of the Act. That the amendments were suggested by the field examiner is admitted by the Board. However, the Board contends that such amended charges were no more than a proper amplification of the allegations of the original charge. The precise question thus raised is not whether the complaint as finally issued was supported by the amended charges, but whether those amended charges were improperly initiated by the Board. In either case it seems that the test to be applied to determine the question of improper Board solicitation is the same; whether the Board has gotten "so completely outside of the situation which gave rise to the [original] charge that it may be said to be initiating the proceeding on its own motion * * *." N. L. R. B. v. Kohler Company, 7 Cir. 1955, 220 F.2d 3, 7.

In the present case, the original charge filed by District 50 alleged violations of Sections 8(a) (3), (2) and (1), reciting as its basis in fact the closing of the respondent's plant for several hours on the night of February 1, 1961, and the directing of employees, by the respondent's supervisors, to attend a meeting of Local 372. The original charge concluded, "For this and other acts and deeds of employer's agents, employees have been deprived of the rights guaranteed them under the Act." The second amended charge similarly alleged violations of Sections 8(a) (3), (2) and (1), pointing to illegal discrimination by the respondent beginning with the discharge of the employees on November 28, 1960. It, too, concluded with the "by these and other acts" catch-all. We conclude that the second amended charge was sufficiently based upon and supported by the original charge so as to negate any findings of illegal Board initiation or solicitation. Charges in actions before the Board are not to be measured by the standards applicable to pleadings in a private lawsuit. N. L. R. B. v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L. Ed.2d 1243. This Court applied the above-styled principle in N. L. R. B. v. Raymond Pearson, Inc., 5th Cir. 1957, 243 F.2d 456, to a situation in which the Board's complaint was attacked by the employer as exceeding the limits of the allegations contained in the charge filed by the union. The charge had alleged the discriminatory firing of an employee; the complaint covered the employer's general conduct, including coercive interrogation and threats, extending back over a month and a half prior to the alleged discharge. Both the original charge and the complaint contained the "by other acts and conduct" language alluded to above. In holding that the charge formed a sufficient basis for the issuance of the complaint, this Court emphasized the presence of the general language in the charge. The nature of the test to be applied to determine the sufficiency of a charge was thus explained:

"It is familiar procedural law in cases of this kind that the complaint is the first technical 'pleading,' and

that the charge simply sets in motion the investigation to determine whether or not the complaint shall issue. Technical precision is not, therefore, required in the charge, and it is sufficient if it informs the alleged violator of the general nature of the violation charged against him and enables him to preserve the evidence relating to the matter." N. L. R. B. v. Raymond Pearson, Inc., 5 Cir. 1957, 243 F.2d 456, 458.

The reasoning in the Raymond Pearson case supports and compels the conclusion here that the amendments did not so exceed in scope the original allegations as to amount to an improper initiation of the action by the Board. We hold that the respondent's claim of lack of jurisdiction in the Board is without merit.

It follows that respondent's next objection—that the Board erred in quashing the subpoena duces tecum and in refusing to allow testimony by the field examiner or presentation of the Board manual—is also without merit. Since the amendments did not exceed the scope of the original charges filed by District 50, but were supported thereby, the issue of fact concerning the source of such amendments, and hence the evidence and testimony going toward proving such facts, were irrelevant to the question of the jurisdiction of the Board and the legality of its order.

Having found substantial evidence to support the findings of the trial examiner and having held that the Board exercised proper jurisdiction in considering the allegations contained in the amended charges, we must consider the legality of the remedy which the Board seeks to impose upon the respondent. Those portions of the order which require the respondent to cease and desist from lending further unlawful assistance to Local 372 and which require it to make whole the discharged employees for any losses in pay raise no special problems and are not attacked by the respondent except on the grounds already discussed and rejected above. Those portions will, therefore, be enforced.

■ The portion of the Board's order which denies certification to the results of the election necessitates further attention. Under the procedural rules of the Board, District 50 was barred by the five-day limitation period from raising questions of employer interference. Board Rules and Regulations § 102.69. The stipulation, made by both unions and the respondent and approved by the Board's Regional Director, contained the agreement that post election procedures— and this would include the time for making objections—would conform to the Board's Rules and Regulations. Even if the objections had been timely, matters such as the lay-offs or discharges occurring prior to the stipulation are not properly considered. F. W. Woolworth Co., 109 N.L.R.B. 1446. To sustain the Board in this particular would,· in effect, set aside the results of an election in disregard of the Board's rules and regulations,. in derogation of a stipulation agreement among the parties, and in contravention of the decisional doctrine that elections will not be open to attack based on conduct which occurred prior to the stipulation agreement cut-off date.

■ We do not question the authority of the Board to consider unfair labor practices committed prior to the election, notwithstanding the absence of timely objection to such election. Bailey Meter Co., 53 N.L.R.B. 106. This much is implicit in our holding, above, that portions of the Board's order directed at pre-election conduct by the respondent will be enforced. We are here concerned with the authority of the Board to impose remedies amounting to a setting· aside of the results of an election which itself is immune from attack under the objection procedure. The Board may not achieve indirectly, by way of the unfair labor practice charges, that which it could not achieve directly by way of objections. to such election.

This is not, contrary to what has been argued before us, the same question as was raised in Aiello Dairy Farms, 110 N.L.R.B. 1365. There the Board focused its attention on the fact that the object--

ing union had proceeded to an election in the first instance, irrespective of any failure to object within the required time limit. The Board held that the union was estopped by its conduct to raise later objections under Section 8(a) (5) based on a pre-election refusal to bargain on the part of the employer. Under our view of the present case, focusing as we do upon the failure of District 50 properly or timely to object, it is unnecessary to decide whether the principle announced in Aiello should be applied to the Section 8(a) (1) and (2) charges in this case.

In answering the question posed concerning the scope of the Board's authority in this case to fashion remedies under Section 10(c), we are aware that there exist differences between the two methods, here under scrutiny, of attacking the result of the election. Technically, of course, the amended charges in this case do not seek to set aside the results under the objection procedure contemplated in the Board's rules, but rather to obtain relief for alleged violations of the Act which occurred prior to, and independently of, the election. And the effect of pre-election conduct on an election is not tested by the same criteria as conduct alleged by a complaint to violate the Act. Texas West Packers, 130 N.L.R.B. 279. Such differences might, in logic, support a conclusion that the foreclosure of attack upon the election by way of the objection procedure should not prevent resort to the complaint procedure.

Such a conclusion would, however, overlook essential factors which must be taken into account. The primary objective of Congress in enacting the National Labor Relations Act was to achieve stability of labor relations. Colgate-Palmolive-Peet Co. v. N. L. R. B., 338 U.S. 355, 70 S.Ct. 166, 94 L.Ed. 161. To introduce a doctrine which would subject "final" elections to collateral attack would, we believe, do violence to that primary objective. It does not appear illogical to require any party seeking to set aside the result of a Board-conducted election to adhere to the rules, such as the one here involved requiring objections to

be filed within five days, promulgated by the Board for the purpose of encouraging the desirable objective of stability and finality. In urging its present position that District 50 be allowed to accomplish indirectly what it could not accomplish directly, the Board has, we think, departed from its prior decision in North Electric Co., 129 N.L.R.B. 675, in which it reached the opposite result. There the bar to the union's raising objections to the election was the pre-election cut-off date rather than the 5-day limitation:

"Even though the Respondent violated Section 8(a) (1) of the Act, a remedy for this violation that resulted in setting aside the contract and invalidating the certification of the [elected union] would permit the Charging Union to accomplish indirectly through the filing of an unfair labor practice charge what it could not accomplish directly by filing objections to the election. In this case, the negotiation and execution of the contract between the Respondent and the [elected union] occurred prior to the date that the Board issued its decision and direction of election. Although objections to the election were filed, they were later withdrawn, and properly so. For under the well-established principles, the Board will not consider election objections based upon interference which occurs prior to the issuance of the decision and direction of election. If the Board were now to set aside the [elected union's] certification and order a new election, it would be permitting the Charging Union to accomplish indirectly through the filing of a Section 8(a) (1) charge what it could not have accomplished directly by pressing objections to the election." North Electric Co., supra, 129 N.L.R.B. pp. 676–677.

We agree with the reasoning of the Board in the North Electric case and hold that the Board was without authority to order the election set aside and to deny certification of Local 372. It follows that

enforcement of that portion of the Board's order which requires that the respondent withhold recognition of Local 372, will be denied.

■ We come finally to the question of the Board's authority to set aside the contract between Local 372 and the respondent because of unlawful assistance and coercion prior to the election. We are not presented with a situation in which Local 372 has been ousted by District 50 as the choice of a majority of the respondent's employees for their collective bargaining representative. We are not, therefore, required to decide the difficult questions raised in cases in which one union is displaced, mid-way in the term of an existing contract, by another as the bargaining representative. Nor do we have a situation in which a real question exists concerning representation at respondent's Cottondale plant. Having already decided that the election results in favor of the incumbent union, Local 372, should be certified and that union recognized by the respondent, we are left to decide the question of the Board's authority to set aside the contract free from considerations of the rights of employees to change their representative in the face of contractual obligations to their employer. See Cox, "The Legal Nature of Collective Bargaining Agreements," 57 Mich.L.Rev. 1, 7–14.

■ The test to be applied under Section 10(c) is whether the remedy sought to be imposed by the Board will effectuate the policies of the Act. Turning to the facts of the case before us, it is undisputed that the contract was entered into prior to any alleged unlawful assistance and at a time when no question was or could have been raised concerning Local 372's authority to represent the respondent's employees. Both of the cases cited by the Board, N. L. R. B. v. District 50, 355 U.S. 453, 78 S.Ct. 386, 2 L.Ed.2d 401, and International Ladies' Garment Workers' Union v. N. L. R. B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762, are distinguishable on this important ground. In both, the contracts which the Board set aside had been entered into after the unlawful assistance and were the fruits of the employer conduct complained of. We are faced, then, with the ultimate question of the power of the Board in this case to set aside the contract, valid when entered into, based upon unlawful assistance occurring after the formation of such contract.

The United States Court of Appeals for the Eighth Circuit decided the same question in N. L. R. B. v. Scullin Steel Co., 8th Cir. 1947, 161 F.2d 143. Citing and quoting from an earlier Supreme Court case, that Court held that the power of the Board did not extend to setting aside a contract which had been entered into prior to the alleged unlawful assistance. The Court said:

"In the instant case there is no relation between the alleged unfair labor practices of respondent and its contract with its employees. As said by the Supreme Court in the Edison case, [Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126] 'Here, there is no basis for a finding that the contracts with the Brotherhood and its locals were a consequence of the unfair labor practices found by the Board or that these contracts themselves thwart any policy of the Act.'" 161 F.2d 143, 147.

We believe that the principle stated in the Scullin decision has equal application to the case before us. Enforcement of the portion of the Board's order setting aside the contract between Local 372 and the respondent and ordering that respondent cease to give effect to it will be denied.

It follows from what we have said above that the Board was without authority to withhold certification of Local 372 to order a new election, and to direct withdrawal of recognition of Local 372 and abrogation of the contract with it unless and until it is certified by the Board. The order will be modified by deleting such provisions (1(e), 1(f), 2(a) and the final paragraph of said order, re-

lating to the holding of a new election). As so modified, the order will be enforced.

The order of the Board, as modified, will be enforced.