**NORTH AMERICAN ROCKWELL COR-PORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 9428.**

United States Court of Appeals Tenth Circuit.

Feb. 14, 1968.

Sharp Whitmore and Stephen E. Tallent, Los Angeles, Cal. (Jan Vetter, Los Angeles, Cal., of counsel, was with them on the brief), for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman and Vivian Asplund, Attys., National Labor Relations, Board, for respondent.

Before HILL and SETH, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

The case is before the Court on North American Aviation's petition for review of the decision and order of the National Labor Relations Board issued April 4, 1967. The Board has cross petitioned for enforcement of its order.

This Court has jurisdiction under Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), the alleged violations having occurred in McAlester, Oklahoma.

The Board's order rests on its finding that North American Aviation engaged in numerous violations of Sections 8(a) (1) and 8(a) (3) of the National Labor Relations Act. Specifically, the Board found that:

The petitioner created the impression that it was conducting surveillance of union activities in violation of Section 8(a) (1) of the Act.

Second, petitioner interrogated and threatened two employees, Virginia Ramsey and Glen Davis, with regard to their union activities in violation of Section 8(a) (1) of the Act.

Third, petitioner temporarily enforced an unduly broad rule against distribution of union literature on company property in violation of Section 8(a) (1) of the Act.

Fourth, petitioner discriminated against two employees, Carl White and Jerry Anderson, in an effort to discourage their union membership by restricting their telephone privileges and by restricting Anderson to his work station, all this in violation of Sections 8(a) (1) and 8(a) (3) of the Act.

Fifth, petitioner discriminatorily discharged an employee, Mary Guazdausky, because of her union activities in violation of Sections 8(a) (1) and 8(a) (3) of the Act.

Other errors urged by petitioner include a number of procedural matters. Petitioner urges that the trial examiner erred in denying its request for interrogatories and a bill of particulars, and in the revocation of a subpena and his refusal to compel the Board to produce contradictory statements. It is also argued that the evidence is insufficient to support the foregoing findings.

## I. Questioning Sufficiency of the Evidence

■■■ As usual, the testimony at the hearing was in conflict, and the petitioner attacks virtually all of the Board's findings as being unsupported by substantial evidence on the record as a whole.[1] As to all but one of the findings, we see no merit in petitioner's arguments. Our scope of review is limited. The question on review is whether the Board's conclusions are supported and are reasonable. See 4 Davis, Administrative Law Treatise 143 (1958). As to all but one of the findings, the Board's conclusions must be upheld since they are supported by substantial evidence on the record as a whole, even though in some instances different inferences might have been drawn from the facts. See Section 10(e) of the National Labor Relations Act, and Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■■■ The finding which is open to question under the substantial evidence rule relates to the restriction of Carl White's telephone privileges. On February 2, 1966, the company was notified that White had been named an "in-plant organizer" for the union. On March 18, a supervisor observed White making a personal phone call on a company phone, and the supervisor advised White that personal calls were not to be made unless they were an emergency. The company explained at the hearing that since the number of outside lines had been reduced from eight to five on March 15, 1966, customer representatives had complained of difficulty in reaching the plant. The rule against personal calls was meant to correct this.

The only evidence of discrimination was White's testimony that other employees continued to make personal calls. However, he could name only one instance when such a call was observed by a supervisor, and in that instance the supervisor testified that the employee was not in his department, and that he notified the employee's supervisor of the incident. At least one non-union employee testified that she had been reprimanded for personal use of a company phone. It was uncontradicted that the plant nurse (a non-management employee) was instructed to allow employees on sick call to make phone calls only in emergencies.[2] The lack of evidence of discrimination, the relative remoteness of the telephone incident from White's appointment as an organizer, the trivial nature of the discrimination alleged, and the reasonable explanation offered by the company, leads to the conclusion that there was a lack of substantial evidence for the Board's findings.[3]

---

1. Since the petitioner voluntarily abandoned its unlawful prohibition against the distribution of union literature on company premises, it argues that no remedial order should have been issued. The Board ordered the petitioner to give new and additional notice of its abandonment of the anti-distribution rule, because the petitioner's prohibition against union literature was bracketing by other unfair labor practices. It does not appear that the Board exceeded its broad power under Section 10(c) of the Act to fashion remedies which will effectuate the purposes of the Act as a whole.

2. The Board specifically found that this nurse was not instructed to discriminate between union and non-union employees, in connection with a charge of telephone discrimination that was dismissed.

3. The discriminatory restriction of Jerry Anderson's telephone privileges seems supported by substantial evidence, even though the finding is somewhat doubtful. Until mid-January, all phones in the plant could reach an outside line simply by dialing 9—after mid-January, the phone at Anderson's work station was routed through a switchboard, where an

## Procedural Questions

The petitioner claims that even though there may be substantial evidence to support the Board's findings, enforcement should be denied because the hearing was tainted by serious procedural errors.

## II. *Validity of the Amendment*

The first of these pertains to the amendment of the charge which was first filed on November 15, 1965. In addition to alleging specific unfair labor practices, it was generally alleged that:

"By the acts set forth in the paragraph above and by other acts and conduct, it, by its officers, agents and representatives, interfered with, restrained and coerced its employees in the exercise of rights guaranteed in Section 7 of the Act."

On March 25, 1966, a complaint was filed containing the same specific and general allegations as those contained in the charge. However, on June 16 or 17, 1966, the General Counsel notified petitioner of his intent to amend the charge and original complaint by alleging that on November 12, 1965, the petitioner had created the impression of surveillance of its employee activities in violation of Section 8(a) (1) of the Act. At the opening of the hearing on June 21, 1966, the amendment was allowed over petitioner's objection that it was barred by the six months' statute of limitations provided in Section 10(b) of the Act.[4]

■ Actions before the Board are not subject to measurement by the standards applicable to complaints in a private lawsuit. The charge is after all merely the administrative step which sets in motion the investigation to determine whether a complaint will issue. It need not be technically precise so long as it generally informs the party charged of the nature of the alleged violations. N.L.R.B. v. Reliance Steel Products Co., 322

F.2d 49 (5th Cir. 1963). And general allegations in the charge or original complaint may later be supplemented or amplified by more specific allegations. These "relate back" to the date the charge was filed. N.L.R.B. v. Louisiana Mfg. Co., 374 F.2d 696 (8th Cir. 1967); N.L.R.B. v. Reliance Steel Products Co., 322 F.2d 49 (5th Cir. 1963); and N.L. R.B. v. Local 169, Indus. Division Intern. Broth. of Teamsters, 228 F.2d 425 (3rd Cir. 1955).

■ The charge in the case at bar notified the petitioner that it was faced not only with the specific violations alleged, but with "other acts and conduct" which "interfered with, restrained and coerced its employees in the exercise of rights guaranteed in Section 7 of the Act." This language is, to be sure, general, but it formed a sufficient basis for later specific allegations. See e. g., N.L.R.B. v. Raymond Pearson, Inc., 243 F.2d 456, 458–459 (5th Cir. 1957), and N.L.R.B. v. Kingston Cake Co., 191 F.2d 563, 567 (3rd Cir. 1951). It was noted in Indiana Metal Products Corp. v. N.L. R.B., 202 F.2d 613, 619 (7th Cir. 1953), that "basing the complaint upon broad allegations in the charge may well, at times, be unfair to an employer, but such interpretation is required by the broad language of Section 10(b)." The relevant portion of this mentioned subsection of the National Labor Relations Act reads as follows:

"[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon."

operator would do the dialing for him. The Board's finding that this was discrimination does not seem unreasonable, although the opposite inference could easily have been drawn in view of the company's explanation.

4. The petitioner's contention is that the unfair labor practice of November 12, 1965, could not be charged later than May 12, 1966, or six months after the violation.

The Act thus contemplates that there will, on occasion, be amendments to the original allegations. The limitation is that the violations alleged in the complaint shall have occurred within the six months' period of limitation fixed by the filing and service of the charge. N.L.R.B. v. Martin, 207 F.2d 655, 657 (9th Cir. 1953), cert. den. 347 U.S. 917, 74 S.Ct. 514, 98 L.Ed. 1072 (1954). The company's remedy was a motion for continuance rather than a motion to dismiss. N.L.R.B. v. Central Oklahoma Milk Producers Ass'n, 285 F.2d 495 (10th Cir. 1960).

### III. *The Denial of Pre-Trial Discovery*

On May 19, 1966, the company served on the Regional Director a document entitled "Interrogatories, or Alternatively, Request for Bill of Particulars and Request for Inspection." This sought discovery in detail of the facts upon which the complaint was based, the identity of persons having knowledge of those facts and the conditions, custody and location of any documents or other tangible evidence bearing on the case. Item 22 of the Interrogatories requested that petitioner be given an opportunity to inspect and copy any such matter in the hands of the Regional Director.

In addition, petitioner directed a subpena duces tecum to the Regional Director calling upon him to appear before a notary public at his office on June 15, 1966, and to produce matter described in the subpena as "all written statements, other documents, photographs, and other tangible things in your possession or under your control which were obtained by agents of the Sixteenth Regional Office in investigating Case No. 16–CA–2519 * * *"

On June 2, 1966, the petitioner's Interrogatories were denied except in a few minor particulars, and its subpena was revoked on June 13. Petitioners assign this as error.

### A. *The Request for a Bill of Particulars*

The request for such a broad bill of particulars was obviously without merit. The National Labor Relations Board is not required to plead its evidence. All that is required of a valid complaint before the Board is a plain statement of the facts claimed to constitute an unfair labor practice. A bill of particulars is justified only when the complaint is so vague that the party charged is unable to meet the General Counsel's case. See, e. g., American Newspaper Pub. Ass'n v. N. L. R. B., 193 F.2d 782 (7th Cir. 1951), aff'd, 345 U.S. 100, 73 S.Ct. 552, 97 L.Ed. 852 (1953); and General Drivers and Helpers Union, Local 662 v. N. L. R. B. (N. L. R. B. v. Rice Lake Creamery Co.), 112 U.S.App.D.C. 323, 302 F.2d 908, 912 (1962), cert. den., Rice Lake Creamery Co. v. General Drivers & Helpers Union, etc., 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1963). To the extent the complaint was this vague, additional information was given to correct it.

### B. *The Interrogatories*

The request for interrogatories was also without merit. The request was apparently based on Section 10(b) of the Act, which provides in relevant part:

"Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28."

It is well settled that the language of Section 10(b) relating to the "rules of evidence" does not require the Board to adopt the discovery procedure contemplated by the Federal Rules of Civil Procedure. The reasons for this were explained in N. L. R. B. v. Vapor Blast Mfg. Co., 287 F.2d 402, 407 (7th Cir. 1961), cert. den., 368 U.S. 823, 82 S.Ct. 42, 7 L.Ed.2d 28 (1961):

"Even if 'rules of evidence' is interpreted to mean 'rules of procedure,' it is in the first instance the responsibility of the Board to formulate its own rules for unfair practice hearings and

to determine whether full discovery is 'practicable' in such hearings."

See also, e. g., Raser Tanning Co. v. N. L. R. B., 276 F.2d 80 (6th Cir. 1960); N. L. R. B. v. Quest-Shon Mark Brassiere Co., 185 F.2d 285 (2nd Cir. 1950), cert. den. 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951).

## C. Revocation of the Subpena

Section 11(1) of the National Labor Relations Act, 29 U.S.C. § 161(1), contains the only express statutory procedure for the issuance and revocation of Board subpenas. In relevant part, Section 11(1) provides as follows:

"The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required."

■■■ The courts have universally recognized the General Counsel's authority under Section 11(1) to compel disclosure of evidence by persons charged with violations of the Act in advance of the unfair practice hearing. See, e. g., Storkline Corp. v. N. L. R. B., 298 F.2d 276 (5th Cir. 1962); N. L. R. B. v. Anchor Rome Mills, 197 F.2d 447 (5th Cir. 1952); N. L. R. B. v. British Auto Parts, Inc., 266 F.Supp. 368 (D.Cal.1967).

■■■ However, Section 102.118 of the Board's rules and regulations (29 U.S.C. App. § 102.118) prevent those charged with unfair labor practices from discovering evidence held by the Board or its employees, unless the Board or General Counsel consents to its production or release.[5] This regulation was promulgated under Section 6 of the Act (29

5. In pertinent part, Section 102.118 provides:

"No regional director, field examiner, trial examiner, attorney, specially designated agent, general counsel, member of the Board, or other officer or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board or testify in behalf of any party to any cause pending in any court or before the Board, or any other Board, commission, or other administrative agency of the United States, or of any State, Territory, or the District of Columbia with respect to any information, facts, or other matter coming to his knowledge in his official capacity or with respect to the contents of any files, documents, reports, memoranda, or records of the Board, whether in answer to a subpena, subpena duces tecum, or otherwise, without the written consent of the Board or the chairman of the Board if the official or document is subject to the supervision or control of the Board; or the general counsel if the official or document is subject to the supervision or control of the general counsel. Whenever any subpena ad testificandum or subpena duces tecum, the purpose of which is to adduce testimony or require the production of records as described hereinabove, shall have been served upon any such persons or other officer or employee of the Board, he will, unless otherwise expressly directed by the Board or the chairman of the Board or the general counsel, as the case may be, move pursuant to the applicable procedure, whether by petition to revoke, motion to quash, or otherwise, to have such subpena invalidated on the ground that the evidence sought is privileged against disclosure by this rule."

U.S.C. § 156), which empowers the Board to adopt rules and regulations to carry out its functions in a manner consistent with the fulfillment of the purposes of the Act.[6] Thus, the regulation is invalid if it has the effect of enlarging the Board's authority beyond the scope intended by Congress.

■■■■■■ Petitioner's pre-hearing subpena was revoked by the trial examiner on the sole ground that the General Counsel had not consented to the production of the material pursuant to Section 102.118 of the Board's rules and regulations. Petitioners argue that this is an invalid ground for the revocation of a subpena because it is not one of the grounds for revocation provided for in Section 11(1) of the Act. However, the statute in question does not state that petitions to revoke subpenas can only be made on the two grounds mentioned therein; rather, it states that a subpena *shall* be revoked if one of the two grounds exist. Thus, insofar as the statute is concerned, the Board may also revoke a subpena on any other ground which is consistent with the purposes of the Act. See General Engineering, Inc. v. N. L. R. B., 341 F.2d 367, 372–373 (9th Cir. 1965).

D. *Denial of Request for Evidence Inconsistent with, or Contradictory to, Testimony Introduced by the General Counsel*

■■■■ At the time of the completion of the General Counsel's case the petitioner demanded an order compelling him to disclose any and all evidence inconsistent with the evidence presented. The trial examiner refused to compel the General Counsel to make this general disclosure. According to petitioner's brief, the hope was to obtain some witness statements that would help it in the presentation of its case. Affidavits of two witnesses had been voluntarily given to the petitioner's counsel by the witnesses. These showed some inconsistency with that of the testimony given by Mary Guazdausky who was a principal witness called by the General Counsel. Because of this, petitioner argues that there might have been other evidence which would help it.

The argument is an ingenious one based upon the Supreme Court's decision in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In *Brady* the Supreme Court severely condemned suppression by the prosecution of evidence material to guilt or to punishment. The particular item which the prosecution had there suppressed was a statement of a co-defendant acknowledging that he had done the actual killing. The Supreme Court held this suppression to be a denial of due process. Brady did not declare that a prosecutor must on demand comb his file for bits and pieces of evidence which conceivably could be favorable to the defense. That would be the effect of upholding petitioner's demand. Thus we are not now confronted with a question of constitutional law magnitude; nor are we required to decide whether a wilful suppression of crucial evidence would be error.

We are mindful that the *Jencks* principle [7] has been adopted by Board regulation. This followed the ruling of the Court of Appeals for the Second Circuit in N. L. R. B. v. Adhesive Products

---

6. The Board has often attempted to justify its custodial regulations through the use of 5 U.S.C. § 22, which authorizes the head of each "executive department" to prescribe regulations for the "custody, use, and preservation of the records, papers and property" of his department. This contention has been rejected in a number of cases. See, e. g., N. L. R. B. v. Seine and Line Fishermens Union, 374 F.2d 974 (9th Cir. 1967); General Engineering, Inc. v. N. L. R. B., 341 F.2d 367 (9th Cir. 1965); and N. L. R. B. v.

Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961). The gist of these cases is that the N. L. R. B. is not an "executive department" within the meaning of the Act. Furthermore, a 1958 amendment provides:

"This section does not authorize withholding information from the public or limiting the availability of records to the public." 72 Stat. 547 (1958).

7. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

Corp., 258 F.2d 403.[8] However, it does not follow from this or from *Brady,* supra, that petitioner was entitled to the blanket order which was here demanded. The denial by the examiner of petitioner's demand was not error.

The Board's order, with the exception of that pertaining to Carl White's phone privileges, is enforced.

---

**8.** After the decision in *Adhesive Products* the Board modified 102.118 by adding the following proviso:

"Provided, After a witness called by the general counsel has testified in a hearing upon a complaint under section 10(c) of the act [29 U.S.C.A. § 160(c)], the respondent may move for the production of any statement of such witness in possession of the general counsel, if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the statement, the testimony of the witness shall be stricken."

The requirements of *Adhesive Products* and of the new proviso were fully adhered to in the hearing of this case below.