**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FRAZIER, INC., Respondent.**

**No. 19262.**

United States Court of Appeals
Eighth Circuit.

June 5, 1969.

Frank H. Itkin, Atty, N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Edith Nash, Atty., N.L.R.B., were with him on brief.

Keith I. Frederick, of Schmid, Ford, Snow, Green & Mooney, Omaha, Neb., for respondent.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is the second of three appeals from the National Labor Relations Board decided today.[1] The Board found that an employee, Richard Osborne, was discharged on October 6, 1966, in violation of §§ 8(a) (1), (3) and (4) of the National Labor Relations Act. 29 U.S.C. § 151, et seq. It also found that Frazier, Inc., had violated § 8(a) (1) of the Act by promising Osborne pension benefits if he would hold off organizational activities in behalf of the Union,[2] by threatening Osborne with discharge should the Union lose a pending representation election and by discontinuing payments to a health and welfare fund on Osborne's behalf. The Board's decision is reported at 165 N.L.R.B. No. 75, 65 L.R.R.M. 1410 (1967).

Frazier denied that any of its actions were related to Osborne's activities with the Union. It contends that Osborne voluntarily terminated his employment when the Union lost the representation election. It denies promising Osborne pension benefits in return for his holding off organizational activities, or threatening him with discharge should the Union lose the election. It concedes that it discontinued payments on his behalf to the health and welfare fund, but contends that it had a right to do so and argues, in the alternative, that discontinuing the payments to the fund cannot be violative of § 8(a) (1) as Osborne was unaware that the payments had been instituted or terminated.

[1] We have examined the record carefully and conclude that there is substantial evidence on the record as a whole to support the Board's conclusions that Frazier violated § 8(a) (1) of the Act by promising Osborne pension benefits if he would abandon his activities on behalf of the Union. The Trial Examiner and the Board properly credited Osborne's testimony that the promise had been made. N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); N.L.R.B. v. Superior Sales, Inc., 366 F.2d 229, 234 (8th Cir. 1966); N. L.R.B. v. Morrison Cafeteria Co. of Little Rock, Inc., 311 F.2d 534, 537–538 (8th Cir. 1963).

[2] We cannot affirm the Board's conclusion that Frazier violated § 8(a) (1) of the Act by discontinuing payments on Osborne's behalf to the health and welfare fund. An employer cannot ordinarily be held to have interfered with, restrained or coerced an employee in the exercise of his right to engage in activities under § 7 of the Act unless the employee or other employees are aware of the restraint or coercion. See, National Labor Relations Board v. Link Belt Co., 311 U.S. 584, 599, 61 S.Ct. 358, 85 L.Ed. 368 (1941); N.L.R.B. v. General Industries Electronics Company, 401 F.2d 297, 300 (8th Cir. 1968). This is not to say, however, that the discontinuance of the benefits is without relevance in determining the motivation for Osborne's discharge.

[3] We turn to the question of whether the Board's conclusions that Frazier threatened to fire Osborne for Union activities and subsequently did so can be sustained. There is evidence

1. The other cases are: Mead & Mount Construction Co. v. N.L.R.B., 411 F.2d 1154 (8th Cir. 1969); Ames Ready-Mix Concrete, Inc. v. N.L.R.B., 411 F.2d 1159 (8th Cir. 1969).

2. Frazier, Inc., employed both plumbers and sheet metal workers. Both groups were represented by their respective unions. The company also had other employees who were not members of any un-

ion. Of these employees, there were four who performed miscellaneous duties. It was this latter group, which included Richard Osborne, that was involved in the organizational effort. The union attempting to organize this group was the General Drivers and Helper's Union Local 554, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

in the record to support the Board's conclusions:

(1) Osborne testified that he left the plant after the election to go home to be with his wife, who was pregnant and not feeling well. He denied that he had quit. He stated that he went to the office to obtain permission to go home but that there were no "top level supervisors" in the office to give consent. He then told one of the shop foremen why he was leaving and added that he was going to remain at home for the rest of the afternoon and watch a ball game.

(2) Osborne's testimony as to his reason for leaving the job was substantiated in part by the testimony of the shop foreman.

(3) Osborne reported for work at the usual time the morning after the election. He was told, when he reported, that he had quit the afternoon before. He was not told that he had been discharged for leaving the job without permission.

(4) Management had manifested its opposition to the organizational effort, namely by offering new pension benefits and by withdrawing existing health and welfare benefits.

It may well be that the above evidence is of such substantiality as to justify an affirmance of the Board's action. We decline to do so because the Examiner erroneously found that Dean Frazier made the following statement to other officers of the company when he learned that Osborne had gone home: "[I] told Osborne during the pre-election campaign period that because of the confusion [he] caused that [I] did not see how Frazier could keep Osborne."

The Board adopted the findings of the Trial Examiner without change. It apparently did so without examining the transcript of the record carefully. We,

thus, have no way of knowing whether the Board would have sustained the Trial Examiner's conclusion with respect to the threat of discharge and the discharge if it knew that Dean Frazier had not made the above admission. We, therefore, remand the discharge issues to the Board with instructions to reexamine the record and to determine whether, absent the employer's admission, the General Counsel has sustained its burden of proof as to the remanded issues.

■ The employer finally contends that it did not receive a fair hearing because of the bias of the Examiner. We have carefully examined the record to determine whether there is any evidence to support this serious charge and conclude that, despite the material error previously referred to, there is not. See, National Labor Relations Bd. v. Pittsburgh S. S. Co., 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949); Bituminous Material & Supply Co. v. N.L.R.B., 281 F.2d 365 (8th Cir. 1960); Annot., 93 L.Ed. 1607 (1949).

The employer contends that the Examiner's bias is indicated by the following:

(1) He permitted the General Counsel to amend the complaint after the hearing began. The amendment alleged that the employer had committed an unfair labor practice by discontinuing payments to the welfare fund. While we disagree with the Examiner's conclusion that the act was an unfair labor practice, it was not bias on his part to permit the amendment. National Labor Relations Act, 29 U.S.C. § 160(b). See, North American Rockwell Corporation v. N.L.R.B., 389 F.2d 866 (10th Cir. 1968).

(2) He erroneously credited Osborne's testimony that three men—Shumacker, Spicer and Sacca—were working on the Salvation Army job when Osborne reported for work at that project,[3] and he

---

3. The testimony concerning the Salvation Army job related to an alleged discriminatory job assignment given to Osborne. Osborne had initially worked in the stockroom at Frazier; but around September 1, 1966, Osborne was assigned to the "Salvation Army job" as a laborer. The

company contends that he was transferred for economic reasons. The Examiner found that Osborne was given this new job assignment because of his Union activities. The Board rejected this finding. Presumably, the Board did so because the record showed that Osborne's

erroneously referred to Dean Frazier and James Frazier as brothers. The errors on these matters were careless, but were not indicative of prejudice.

Six other instances cited by Frazier as indicating bias on the part of the Examiner relate to the propriety of his crediting certain testimony of Osborne and to the correctness of certain conclusions reached by the Examiner from credited testimony. In our view, the Examiner did not err in crediting Osborne's testimony or in reaching the conclusions complained of.

We have already considered the one material error of the Examiner. While it was serious, it was not, in our judgment, brought about by the bias or prejudice of the Examiner.

We remand to the Board for action consistent with this opinion.

testimony on this point was erroneous in that Spicer's employment had terminated in August of 1966 and Sacca was only a summer employee.