# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2023

Lyle W. Cayce
Clerk

No. 21-60532

United Natural Foods, Incorporated, *doing business as* United Natural Foods, Incorporated and SuperValu, Incorporated,

*Petitioner,*

*versus*

National Labor Relations Board,

*Respondent.*

Petition for Review of an Order of the
National Labor Relations Board
NLRB No. 19-CA-249264
NLRB No. 19-CB-250856

Before Higginbotham, Higginson, and Oldham, *Circuit Judges.*
Stephen A. Higginson, *Circuit Judge*:

After the Acting General Counsel of the National Labor Relations Board withdrew an unfair labor practice complaint that his predecessor had issued against a union, the aggrieved employer requested permission to appeal the complaint's withdrawal to the Board. The Board denied the request, concluding that the Acting General Counsel's decision was an unreviewable act of prosecutorial discretion. The employer then petitioned

No. 21-60532

this court for review of the Board's order. We determine that we have jurisdiction and DENY the petition.

I.

On October 28, 2019, United Natural Foods Inc. ("UNFI") filed an unfair labor practice charge with the National Labor Relations Board ("NLRB" or "Board").[1] As amended, the charge alleges that International Brotherhood of Teamsters Local 117 and Local 313 (the "Unions") violated the National Labor Relations Act ("NLRA") by (1) attempting to impose union representation on certain of UNFI's employees, (2) attempting to cause UNFI to discriminate among its employees, and (3) refusing to collectively bargain with UNFI. Local 117 also filed an unfair labor practice charge against UNFI.

On July 29, 2020, NLRB's Regional Director for Region 19 (the "Regional Director"), acting on behalf of NLRB's General Counsel at the time, Peter B. Robb, issued a Consolidated Complaint alleging that the Unions had violated subsections 8(b)(1)(A), 8(b)(2), and 8(b)(3) of the NLRA. The Consolidated Complaint also alleged that UNFI had violated

---

[1] This opinion uses the term "NLRB" when referring either to the agency generally or to enforcement officials within the agency, such as the agency's General Counsel and regional directors. It uses the term "Board" when referring specifically to the five-member body that performs a quasi-judicial function. *Compare* 29 U.S.C. § 153(a) (creating a "National Labor Relations Board" of five members), *and id.* § 160(c) (authorizing the "Board" to adjudicate labor disputes), *with id.* § 153(d) (creating a "General Counsel of the Board" who "shall exercise general supervision over all attorneys employed by the Board" and "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the Board"); *see also Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 443 (5th Cir. 2022) (explaining that the Board was created "to execute quasi-legislative, quasi-judicial functions," in contrast to NLRB's General Counsel, who "perform[s] quintessentially prosecutorial functions").

No. 21-60532

various provisions of the NLRA. A hearing was scheduled to take place before an administrative law judge on March 2, 2021.

In January 2021, President Biden removed Robb from the office of NLRB General Counsel and designated Peter Sung Ohr as Acting General Counsel. Subsequently, the Unions moved to postpone the scheduled hearing so that Acting General Counsel Ohr could review the complaint and determine whether his office wished to continue pursuing the case. The Regional Director granted the request, rescheduling the hearing to April 6. The Unions also wrote directly to Ohr to request that he reconsider the decision to issue a complaint against them.

On February 1, UNFI filed with the Board a motion to sever the case against UNFI from the case against the Unions, to transfer the case against the Unions from the administrative law judge to the Board, and for summary judgment against the Unions. Before the Board ruled on the motion, the Regional Director, now acting on behalf of Acting General Counsel Ohr, issued an order (the "RD Order") severing the claims against UNFI[2] and withdrawing the Consolidated Complaint to the extent that it alleged claims against the Unions. The RD Order explained that after reviewing "the allegations in the Consolidated Complaint," the Acting General Counsel had decided to exercise "his prosecutorial discretion" and dismiss the charges against the Unions.

UNFI filed with the Board both a request for special permission to appeal the RD Order and the appeal itself,[3] arguing that the Acting General

---

[2] UNFI ultimately settled this case, leading to a dismissal of the charges.

[3] *See* 29 C.F.R. § 102.26 (providing that the rulings of Regional Directors "may not be appealed directly to the Board except by special permission of the Board" and that "[r]equests to the Board for special permission to appeal" must be filed "together with the appeal").

No. 21-60532

Counsel had no authority to unilaterally dismiss the charges against the Union after UNFI had filed its motion for summary judgment and that the appointment of Acting General Counsel Ohr was unlawful. UNFI also filed an appeal with the Acting General Counsel.[4]

The Board denied UNFI's request for special permission to appeal the RD Order on May 11. The Board reasoned that UNFI's request "is not properly before the Board" because "the Regional Director has the prosecutorial discretion to withdraw a complaint sua sponte at any time before the hearing" and "[h]is exercise of that discretion is not subject to Board or court review." The Board explained that even though UNFI had moved for summary judgment, the complaint had not "advanced so far into the adjudicatory process that a dismissal takes on the character of an adjudication." The Board further stated that because it did not have jurisdiction to review the RD Order, it would not consider UNFI's arguments regarding the appointment of Acting General Counsel Ohr. However, the Board did note that "UNFI may appeal the Regional Director's decision to withdraw the complaint to the General Counsel consistent with Section 102.19."

The Acting General Counsel denied UNFI's appeal on June 22. He rejected UNFI's argument that by dismissing the charges against the Unions he "was adjudicating the merits of the case, rather than acting in his prosecutorial capacity." Rather, he stated that he had "simply reviewed the evidence and determined that a violation had not occurred and a complaint was not appropriate."

---

[4] *See* 29 C.F.R. § 102.19 (providing that a Regional Director's decision to withdraw a complaint may be appealed to the General Counsel).

No. 21-60532

UNFI petitioned this court for review of the Board's order denying it permission to appeal the RD Order.[5] NLRB subsequently filed a motion to dismiss the petition for review for lack of jurisdiction. A panel of this court carried the motion with the case.

## II.

We first consider NLRB's jurisdictional challenge, which the agency renewed in its brief.

"Except as authorized by statute, a court of appeals does not have jurisdiction to review actions of the Board." *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1119 (5th Cir. 1974). Section 10 of the NLRA, 29 U.S.C. § 160, "is the sole provision vesting review [of Board actions] with the courts of appeal." *Id.* That provision authorizes "[a]ny person aggrieved by a final order of the Board" to petition for review in an appropriate federal appellate court. 29 U.S.C. § 160(f). NLRB maintains that we do not have jurisdiction over UNFI's petition because the Board order at issue in this case is not "final."

"[T]he phrase 'a final order of the Board', as used in [§ 160(f)], refers solely to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found." *Shell Chem.*, 495 F.2d at 1120 (quoting *Laundry Workers Int'l Union Loc. 221 v. NLRB*, 197 F.2d 701, 703 (5th Cir. 1952)). The Board's order in this case "denied" UNFI's "request for special permission to appeal" the RD Order, which had itself "withdrawn" part of the Consolidated Complaint and "dismissed" the charges against the Unions. Because the Board's order allowed an order dismissing a complaint to remain in place, the order had the practical effect

---

[5] UNFI did not—and could not—appeal the Acting General Counsel's denial of its appeal of the RD Order.

of dismissing the complaint. Accordingly, the Board's order qualifies as "a final order of the Board" under *Shell Chemical*. *Cf. U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599-600 (2016) (describing "the 'pragmatic' approach" that the Supreme Court has "long taken to finality" (citation omitted)).

NLRB points us to several cases in which courts dismissed for lack of jurisdiction petitions for review brought under 29 U.S.C. § 160(f). However, these cases all prove inapposite. In *Laundry Workers*, we held that we did not have jurisdiction to review the Board's decision not to issue a pre-complaint subpoena. 197 F.2d at 702-04. In *Shell Chemical*, we concluded that we could not review "the quashing of the notice of a section 10(k) proceeding," an action that occurs before the issuance of any complaint alleging unfair labor practices. 495 F.2d at 1121.[6] And in *J. P. Stevens Employees Educational Committee v. NLRB*, the Fourth Circuit determined that it did not have jurisdiction to review a Board order denying a request for special permission to appeal the denial of a motion to intervene, explaining that "the Board's denial of a motion to intervene is reviewable in this court after the Board has concluded the unfair labor practice hearing and issued its final order." 582 F.2d 326, 328-329 (4th Cir. 1978). Because none of these cases involved a Board order that effectively dismissed a complaint, they do not support NLRB's argument that we lack jurisdiction over this petition.

The most analogous case that the parties have identified is *Boilermakers Union Local 6 v. NLRB*, 872 F.2d 331 (9th Cir. 1989). In that

---

[6] Section 10(k) proceedings are a method of resolving jurisdictional disputes between labor unions "without the cumbersome, fault determining, and coercive process of an unfair labor practice proceeding under section 8(b)(4)(D)." *Shell Chemical*, 495 F.2d at 1121; *see* 29 U.S.C. §§ 158(b)(4)(D), 160(k). In cases where Section 10(k) applies, "a complaint on a section 8(b)(4)(D) charge does not issue until after the provisions of section 10(k) have been satisfied." *Shell Chemical*, 495 F.2d at 1122.

case, the underlying Board order had held that the General Counsel had prosecutorial discretion to withdraw a complaint, reversing an administrative law judge's order denying the General Counsel's motion to withdraw. *Id.* at 331-32. Thus, as in this case, the *Boilermakers* petitioner was challenging a Board order concluding that the General Counsel had discretion to withdraw a complaint. However, NLRB did not ask the Ninth Circuit to dismiss the petition for lack of jurisdiction. Instead, the agency argued that the "court's review is limited to deciding whether the General Counsel's decision was an act of prosecutorial discretion," and the Ninth Circuit agreed. *Id.* at 332. *Boilermakers* thus supports the proposition that we *do* have jurisdiction to review the Board's conclusion that the Acting General Counsel had prosecutorial discretion to withdraw the complaint against the Unions.[7]

NLRB argues that, regardless of this pre-1990 lower court caselaw interpreting the NLRA, the Board's order does not qualify as "final" under later-in-time Supreme Court decisions elucidating general principles of administrative law. The Supreme Court set forth the following test for finality in a case involving the Administrative Procedure Act ("APA"):

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

---

[7] As discussed further below, the Ninth Circuit ultimately denied the petition for review in *Boilermakers*, holding "that the General Counsel's decision to withdraw the complaint was an act of prosecutorial discretion which is non-reviewable." 872 F.2d at 332, 334.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also Sackett v. EPA.*, 566 U.S. 120, 126-27 (2012) (applying the *Bennett* test). NLRB points out that when the Board issued its order on May 11, 2021, UNFI's appeal to the Acting General Counsel remained pending. Therefore, NLRB argues, the Board's order did not consummate the agency's decision-making process or cause any legal consequences.

However, when applying *Bennett* to this case, we must keep in mind that while *Bennett* interpreted the APA, which authorizes judicial review of "final *agency* action," 520 U.S. at 177 (emphasis added) (quoting 5 U.S.C. § 704), UNFI invokes the NLRA as the source of this court's jurisdiction. The NLRA "distinguishe[s] orders of the General Counsel from Board orders," *NLRB v. United Food & Commercial Workers Union, Loc. 23* (*UFCW*), 484 U.S. 112, 128 (1987) (citing 29 U.S.C. §§ 153, 160), and it authorizes judicial review only of "final order[s] of *the Board*." 29 U.S.C. § 160(f) (emphasis added); *see also UFCW*, 484 U.S. at 129 (explaining that § 160(f) "provides that final decisions 'of the Board' shall be judicially reviewable" but "plainly cannot be read to provide for judicial review of the General Counsel's prosecutorial function"). Thus, when determining whether this case satisfies the first *Bennett* condition, UNFI's appeal to the Acting General Counsel is irrelevant. The question is not whether the Board's order marked the consummation of the entire agency's decision-making process but rather whether the order marked the culmination of the *Board*'s decision-making process. And the answer to that question is yes. When it denied UNFI special permission to appeal the RD Order dismissing the complaint against the Unions, the Board consummated its decision-making process. *See* 29 C.F.R. § 102.26 (providing that a Regional Director's order can only be appealed with the Board's permission); *Bennett*, 520 U.S. at 177-78.

No. 21-60532

The Board's order also satisfies the second *Bennett* condition. The order determined that the Acting General Counsel was "permitted to withdraw the complaint" against the Unions. Moreover, by permitting the Acting General Counsel to dismiss the complaint against the Unions, the order rendered moot UNFI's pending motion for summary judgment. The Board's order thus had "direct and appreciable legal consequences." *Bennett*, 520 U.S. at 178.

In sum, the Board order at issue in this case qualifies as "final" under the Supreme Court's decision in *Bennett*, this court's decision in *Shell Chemical*, and the Ninth Circuit's decision in *Boilermakers*. The cases that NLRB cites provide no reason to think otherwise. An agency must carry a "heavy burden" to rebut the "strong presumption favoring judicial review of administrative action," *Salinas v. United States R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)), and NLRB has not carried that burden here. Accordingly, we have jurisdiction over UNFI's petition for review. *See* 29 U.S.C. § 160(f).

### III.

UNFI raises two issues in its petition for review. First, it argues that the Acting General Counsel (acting through the Regional Director)[8] lacked authority to withdraw the complaint against the Unions because UNFI had filed a motion for summary judgment. Second, it argues that the Acting General Counsel lacked authority to withdraw the complaint because former General Counsel Robb had been improperly removed from office.

---

[8] *See* 29 U.S.C. § 153(d) (providing that the General Counsel has "final authority . . . in respect of the prosecution of . . . complaints before the Board" and "exercise[s] general supervision over all attorneys employed by the Board . . . and over the officers and employees in the regional offices").

No. 21-60532

## A.

"[T]he language, structure, and history of the NLRA, as amended, clearly differentiate between 'prosecutorial' determinations, to be made solely by the General Counsel and which are not subject to review under the [NLRA], and 'adjudicatory' decisions, to be made by the Board and which are subject to judicial review." *UFCW*, 484 U.S. at 130. UNFI argues that when it filed a motion for summary judgment against the Unions, the decision of whether to withdraw the complaint against the Unions became an adjudicatory decision to be made by the Board.

The Board rejected this argument as to its own authority. It explained that even though "UNFI had filed its motion for summary judgment before the Regional Director withdrew the complaint," the Board had not "issued a Notice to Show Cause," and accordingly "the case had not yet transferred to the Board." For this reason, the Board did not view the complaint as having "advanced so far into the adjudicatory process that a dismissal takes on the character of an adjudication." Rather, the Board concluded that "the Regional Director has the prosecutorial discretion to withdraw a complaint sua sponte at any time before the hearing" and that "[h]is exercise of that discretion is not subject to Board or court review."

"We accord *Chevron* deference to the Board's reasonable interpretations of ambiguous provisions in the NLRA." *Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 292 (5th Cir. 2015). The NLRA is ambiguous regarding where to draw the line between prosecutorial and adjudicatory decisions. *See UFCW*, 484 U.S. at 125 (explaining that some NLRB decisions "might fairly be said to fall on either side of the division" between prosecutorial and adjudicatory). Accordingly, we must uphold the Board's conclusion that the Acting General Counsel had discretion to withdraw the complaint if that conclusion has "a reasonable basis in the law and [is] not inconsistent with

the Act." *Entergy*, 810 F.3d at 292; *see also UFCW*, 484 U.S. at 125 (explaining that when considering the question of whether an NLRB action is prosecutorial or adjudicatory, a court's "task . . . is not judicially to categorize each agency determination, but rather to decide whether the agency's regulatory placement is permissible").[9]

The NLRA provides that the General Counsel "shall have final authority . . . in respect of the prosecution of . . . complaints before the Board." 29 U.S.C. § 153(d). Given this text, along with the NLRA's structure and history, the Supreme Court has "h[e]ld that it is a reasonable construction of the NLRA to find that until the hearing begins, settlement or dismissal determinations are prosecutorial." *UFCW*, 484 U.S. at 125-26. The Court reasoned that since the General Counsel has "the concededly unreviewable discretion to file a complaint," they must also have "the same discretion to withdraw the complaint before hearing if further investigation discloses that the case is too weak to prosecute." *Id.* at 126. Here, the

---

[9] UNFI briefly suggests in a footnote that "*Chevron* should be abandoned in regard to the NLRB because recurring changes in positions by the Board and/or its General Counsel—as this case, and many others, illustrate—make de novo court review necessary to promote 'stability of labor relations,' which is the 'primary objective' of the NLRA." Because UNFI supports this argument with only a "*see generally*" citation to five law review articles, without directing the court to specific pages or contentions within those articles, this argument is waived. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it. It is not enough to merely mention or allude to a legal theory. . . . A party must 'press' its claims. At the very least, this means clearly identifying a theory as a proposed basis for deciding the case—merely 'intimating' an argument is not the same as 'pressing' it." (cleaned up)). Even if we were to consider the merits of this argument, UNFI conceded at oral argument that it could not cite a single case that supported its position. Rather, the Supreme Court has made it clear that "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005). Moreover, as explained below, the Board order in this case does not conflict with prior Board decisions.

No. 21-60532

Regional Director (acting as an agent of the Acting General Counsel) withdrew the complaint against the Unions on February 24, 2021, well before the scheduled hearing date of April 6. Because the Regional Director withdrew the complaint before the hearing, his action appears to be an unreviewable act of prosecutorial discretion under the express terms of *UFCW*. *See* 484 U.S. at 125-26, 130; *see also* 29 C.F.R. § 102.18 (NLRB regulation providing that "[a] complaint may be withdrawn before the hearing by the Regional Director on the Director's own motion").

UNFI attempts to distinguish *UFCW*, pointing out that in that case, the Court stated that it was addressing the "narrow" issue of "whether a postcomplaint, prehearing informal settlement" between the General Counsel and a charged party—which, under NLRB regulations, does not require Board approval—"is subject to judicial review." *UFCW*, 484 U.S. at 121, 122-23. Accordingly, UNFI reasons, *UFCW* does not apply to cases such as this one, where the General Counsel unilaterally withdraws a complaint even though a party has filed a motion for summary judgment. UNFI also emphasizes that under the Board's own precedents, "[a]t some point . . . a complaint may be said to have advanced so far into the adjudicatory process that a dismissal takes on the character of an adjudication," *Sheet Metal Workers Int'l Ass'n Loc. Union 28 (American Elgen)*, 306 N.L.R.B. 981, 982 (1992), and that, in drawing the line between prosecutorial and adjudicatory actions, the Board has stated that "the General Counsel has unreviewable discretion . . . to withdraw a complaint after the hearing on it has opened but before any evidence has been introduced, *at least so long as there is no contention that a legal issue is ripe for adjudication on the parties' pleadings alone*," *id.* at 981 (emphasis added). Therefore, UNFI concludes, if a party has filed a motion for summary judgment in an NLRB unfair labor practice case, Board precedent supports the proposition that the General Counsel does not necessarily have discretion to withdraw the complaint any time

12

before the hearing, and Supreme Court precedent does not compel a different holding.

Indeed, UNFI maintains, the Board's conclusion that the General Counsel can withdraw a complaint after a party has filed a motion for summary judgment is irrational. After all, whenever the Board receives a motion for summary judgment, NLRB regulations provide that "the Board may deny the motion or issue a Notice to Show Cause why the motion may not be granted." 29 C.F.R. § 102.24(b). This decision turns on whether "there is a genuine issue for hearing." *Id.* Pointing to Federal Rule of Civil Procedure 56(a), UNFI argues that the Board's inquiry into whether a summary judgment motion has sufficient merit to warrant issuance of a Notice to Show Cause "is a classic example of an adjudicative determination." A federal court plaintiff cannot unilaterally dismiss a complaint once the defendant has filed a motion for summary judgment, FED. R. CIV. P. 41(a)(1)(A)(i), and UNFI insists that an analogous rule must apply in NLRB proceedings.

In response, NLRB stresses that when the Acting General Counsel withdrew the complaint, the Board had not yet taken any action on UNFI's motion for summary judgment. As explained above, when the Board receives a summary judgment motion, it may either deny the motion or issue a Notice to Show Cause. 29 C.F.R. § 102.24(b). Additionally, when "the Board deems it necessary to effectuate the purposes of the [NLRA] or to avoid unnecessary costs or delay, it may . . . order that [a] complaint and any proceeding which may have been instituted with respect thereto be transferred to and continued before it," 29 C.F.R. § 102.50, and the Board stated in its order that it transfers a case whenever it issues a Notice to Show Cause. Here, although UNFI had filed a summary judgment motion, the Board had neither issued a Notice to Show Cause nor transferred the case to itself at the time that the complaint was withdrawn. NLRB argues that "the Board reasonably

determined that before the General Counsel is divested of the prosecutorial authority to withdraw a pre-hearing complaint, the Board must at least have taken the initial step to issue a Notice to Show Cause and to transfer the complaint and related proceedings to itself."

We agree with NLRB. We are reluctant to place too much weight on UNFI's analogies to the Federal Rules of Civil Procedure, since the Supreme Court has cautioned against "attempt[s] to analogize the role of the General Counsel in an unfair labor practice setting to other contexts," stating that such analogies are "of little aid." *UFCW*, 484 U.S. at 126 n.21. More importantly, while one can reasonably argue that under a de novo interpretation of the NLRA, the General Counsel might not have discretion to withdraw a complaint after a motion for summary judgment has been filed, we are not interpreting the NLRA de novo. Rather, the Supreme Court was clear in *UFCW* that our task is only to determine whether the Board's categorization of the RD Order as prosecutorial is "permissible," and in that case the Court specifically "h[e]ld that it is a reasonable construction of the NLRA to find that until the hearing begins, settlement or dismissal determinations are prosecutorial." *Id.* at 125-26. This holding might not govern cases where a Notice to Show Cause has issued, because in such cases a hearing might never occur. *See* 29 C.F.R. § 102.24(b) ("If a Notice to Show Cause is issued, the hearing, if scheduled, will normally be postponed indefinitely."). However, because the Board never issued a Notice to Show Cause in response to UNFI's motion for summary judgment, the April 6 hearing was still scheduled to take place when the RD Order was issued on February 24. Accordingly, the Board's own conclusion that the General Counsel has discretion to withdraw unfair labor practice complaints in cases where a motion for summary judgment has been filed but no hearing has occurred and the Board has neither issued a Notice to Show Cause nor

transferred the case to itself fits squarely within the holding of *UFCW*. As such, it is a permissible interpretation of the NLRA.

The dissent's theory that Federal Rule of Civil Procedure 41(a)(1)(A)(i) applies in unfair labor practices proceedings is similarly flawed. The dissent relies on 29 U.S.C. § 160(b), which says that "[a]ny such proceeding shall, *so far as practicable*, be conducted in accordance with the rules of evidence applicable in the district court of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of title 28." *Id.* § 160(b) (emphasis added). The dissent reasons that because "the Board never claimed that following Rule 41 would be impracticable," § 160(b) "requires" the Board to follow Rule 41.

To begin, UNFI never argues that § 160(b) forces the NLRB to follow Rule 41. Unpersuaded by the arguments that UNFI *does* make, the dissent asserts what it thinks is a better one. But our "adversarial system of adjudication . . . . is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument[s] entitling them to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (cleaned up). UNFI did not ask us to base our holding in § 160(b), and it would be improper for us to cross the bench to counsel's table and litigate the case for it.

There are good reasons why UNFI didn't ask us to interpret § 160(b) as requiring the NLRB to use Rule 41(a)(1)(A)(i). At least four of our sister circuits have rejected the dissent's premise that § 160(b) incorporates the entire Federal Rules of Civil Procedure into Board proceedings. *See DirectSat USA LLC v. NLRB*, 925 F.3d 1272, 1276-77 (D.C. Cir. 2019) (holding that proper inquiry on review of NLRB denial of a motion to intervene is whether the NLRB "exercised its discretion in an arbitrary way and not whether its

analysis is consistent with the standards set forth in FED. R. CIV. P. 24."); *NLRB v. Valley Mold Co.*, 530 F.2d 693, 694 (6th Cir. 1976) (holding that this language "does not require the Board to follow the discovery procedures set forth in the Federal Rules of Civil procedure"); *N. Am. Rockwell Corp. v. NLRB*, 389 F.2d 866, 871 (10th Cir. 1968) (similar); *NLRB v. Vapor Blast Mfg. Co.*, 287 F.2d 402, 407 (7th Cir. 1961) (similar). *But see NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 475 (2d Cir. 2009) (interpreting similar language in 29 C.F.R. § 101.10(a) as meaning "that the Board's procedures are to be controlled by the Federal Rules of Civil Procedure as far as practicable" (cleaned up)). Indeed, the NLRB has promulgated regulations adopting some but not all the requirements of the Federal Rules of Civil Procedure, including different deadlines for filing motions for summary judgment and to dismiss than those set by the Federal Rules, *compare* 29 C.F.R. § 102.24(b) *with* FED. R. CIV. P. 56(b), FED. R. CIV. P. 12(b), *and* FED. R. CIV. P. 12(h)(2).

In setting a procedure for withdrawing complaints, the NLRB did not adopt the requirements of Rule 41(a)(1)(A)(i). Under 29 C.F.R. § 102.18, "[a] complaint may be withdrawn before the hearing by the Regional Director on the Director's own motion." 29 C.F.R. § 102.18. Unlike Rule 41—which does not permit a plaintiff in a civil action to dismiss the action after "the opposing party serves . . . a motion for summary judgment," FED. R. CIV. P. 41(a)(1)(A)(i)—§ 102.18 gives the Director the ability to withdraw a complaint so long as the Director does so "before the hearing."[10]

---

[10] The dissent argues that a plaintiff proceeding under Rule 41(a)(1)(A)(i) may "withdraw[]" "the complaint . . . on the plaintiff's motion." But this is an inaccurate characterization of Rule 41(a)(1)(A)(i). Rather, pursuant to this rule, a "plaintiff may dismiss an action *without a court order*" by merely filing "a notice of dismissal," not a motion. FED. R. CIV. P. 41(a)(1)(A)(i) (emphasis added). Notably, the case the dissent cites in support of this proposition concerns a different rule, Rule 41(a)(2), which provides for dismissal "by court order." FED. R. CIV. P. 41(a)(2); *see Templeton v. Nedlloyd Lines,*

No. 21-60532

Therefore, if Rule 41 did apply to keep the Director from withdrawing a complaint before the hearing but after "the opposing party serve[d] . . . a motion for summary judgment," FED. R. CIV. P. 41(a)(1)(A)(i), the phrase "before the hearing" in § 102.18 would be meaningless. This alone renders enforcement of Rule 41(a)(1)(A)(i) against the Board not "practicable" within the meaning of § 160(b).

Applying Rule 41(a)(1)(A)(i) instead of § 102.18 would also undermine the NLRB's ability to prosecute unfair labor practices charges. Congress gave the General Counsel "final authority" to "prosecut[e] . . . complaints before the Board." 29 U.S.C. § 153(d). It follows that the General Counsel must "have final authority to dismiss a complaint in favor of an informal settlement, at least before a hearing begins." *UFCW*, 484 U.S. at 422. But under the dissent's theory, a party who suspects that the NLRB intended to informally settle a complaint could defeat the settlement—and Supreme Court precedent—by racing to file a summary judgment motion. Rule 41(a)(1)(A)(i) is accordingly incompatible with the statutory scheme.

Finally, even assuming that the dissent is right and Rule 41(a)(1)(A)(i) does apply, the dissent misunderstands how Rule 41(a)(1)(A)(i) would operate in this case. Under this rule, "the *plaintiff* may dismiss an action" by filing a notice of dismissal "before the *opposing party* serves . . . a motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i) (emphasis added). To the extent that we can analogize between civil litigation and an unfair labor practice proceeding, *see UFCW*, 484 U.S. at 126 n.21, UNFI is not an "opposing party" to the NLRB in the instant case. UNFI is a party aggrieved by the Unions' alleged unfair labor practices. UNFI filed a charge with the

---

901 F.2d 1273, 1274 (5th Cir. 1990). The dissent's confusion on this point belies how poor of a fit Rule 41 is for unfair labor practice proceedings.

NLRB, and the NLRB decided to prosecute the charge by issuing a complaint. Only if the Unions had moved for summary judgment would Rule 41(a)(1)(A)(i) have been triggered to stop the NLRB from unilaterally dismissing the complaint.

Two further observations support the permissibility of the Board's order. First, the order is consistent with the only circuit case identified by the parties that addresses a similar question. *See Boilermakers*, 872 F.2d at 333-34 (holding that "Administrative Law Judges and the Board have no authority to review the NLRB's General Counsel's decision to withdraw an unfair labor practice complaint after the hearing has commenced but before evidence on the merits," in part because "the General Counsel always exercises nonreviewable prosecutorial discretion when he withdraws a complaint because he no longer believes the evidence supports it").

Second, we are unpersuaded by UNFI's argument that the Board's order "conflicts with longstanding Board precedent holding that when the merits of a case are being considered by an ALJ or the Board, the General Counsel no longer has unreviewable authority over the complaint." The Board decisions that UNFI cites all prove readily distinguishable from this case. In *UPMC*, an administrative law judge had already conducted a hearing and issued an order before the Board approved a settlement over the objections of the General Counsel. 365 N.L.R.B. No. 153, 2017 WL 6350171, at *1-3 (Dec. 11, 2017). In *Independent Stave Co.*, the Board granted a summary judgment motion over the General Counsel's objection, but only after it had "issued an order transferring the proceeding to the Board and a Notice to Show Cause." 287 N.L.R.B. 740, 740-43 (1987). And in *Robinson Freight Lines*, the Board affirmed a regional director's decision to continue litigating an unfair labor practice charge even though the parties had reached a private settlement. 117 N.L.R.B. 1483, 1484-86 (1957). The Board did not hold in any of these cases that the General Counsel's authority over a

complaint becomes reviewable at some point *before* either a hearing has commenced or the Board has issued a notice to show cause and transferred the case to itself.[11]

For the above reasons, the Board's order is a permissible interpretation of the NLRA. Accordingly, we must uphold it. *See UFCW*, 484 U.S. at 125; *Entergy*, 810 F.3d at 292.

B.

UNFI also argues that Acting General Counsel Ohr lacked authority to withdraw the complaint "because his designation was invalid." President Biden removed General Counsel Robb from his office before the end of Robb's four-year term, and UNFI maintains that the President had no authority to do so without cause. UNFI then reasons that because "the President had no power to remove Robb, he had no power to designate Ohr to serve as Acting General Counsel," making "the actions Ohr took as Acting General Counsel . . . void."

This court recently rejected an identical argument. In *Exela Enterprise Solutions v. NLRB*, we considered the petitioner's contention that an unfair labor practice complaint issued by Acting General Counsel Ohr "was *ultra vires* because the President unlawfully removed the former General Counsel

---

[11] We are also unpersuaded by UNFI's argument that the Board's emphasis on a lack of a Notice to Show Cause is "especially arbitrary here because the Unions have acknowledged in [related] federal district court litigation, which concededly involves the same disputed issues, that . . . these issues are appropriate for summary-judgment resolution." The Unions (who were granted permission to intervene in this case) deny that the federal district court litigation involves the exact same issues. The record does not contain the relevant district court filings. But regardless of the status of this parallel litigation, UNFI cites no authority for the proposition either that the Board must issue a Notice to Show Cause or that the General Counsel cannot withdraw a complaint in cases where the charged party has acknowledged in a related case that the issue is ripe for summary judgment.

without cause." 32 F.4th 436, 441 (5th Cir. 2022). After an extensive analysis of the NLRA's text and structure, we held "that the NLRA does not provide tenure protections to the General Counsel of the Board." *Id.* at 445. Accordingly, we concluded that "President Biden lawfully removed former-General Counsel Robb without cause." *Id.*

Given our recent decision in *Exela*, this issue is foreclosed.

## IV.

We conclude that we have jurisdiction over this petition for review, that Acting General Counsel Ohr's designation was valid, and that the Board permissibly determined that Acting General Counsel Ohr had discretion to withdraw the complaint against the Unions. Accordingly, we DENY both NLRB's motion to dismiss the petition for review for lack of jurisdiction and UNFI's petition for review.

No. 21-60532

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

I agree with the majority that we have jurisdiction to review the "final order of the Board" at issue here. 29 U.S.C. § 160(f). In my view, however, § 160 plainly renders unlawful the Board's decision. I'd grant the petition.

I.

United Natural Foods, Inc. ("UNFI" or "petitioner") is a wholesale grocery company. In February 2019, it got into a dispute with various unions in the Pacific Northwest. On October 28, 2019, UNFI filed a charge with the National Labor Relations Board ("NLRB" or "the Board"). UNFI contended that the unions' activities constituted unfair labor practices under the National Labor Relations Act ("NLRA").

On July 29, 2020, the NLRB regional director[1] issued a complaint on UNFI's charge. ROA.16–27 (reproducing the regional director's complaint in Case 19-CB-250856 (N.L.R.B.)). In the same document, the regional director ordered the unions to respond to UNFI's allegations by August 12, 2020. Then the regional director noticed a hearing before an administrative law judge in Seattle, Washington, on March 2, 2021.

Under the NLRB's rules, any motion for summary judgment was due 28 days before the noticed hearing. *See* 29 C.F.R. § 102.24(b). The day before that deadline, on February 1, UNFI filed its motion for summary judgment.

---

[1] Under the NLRB's rules and regulations, the regional director has authority to act on a charge like the one filed by UNFI: "After a charge has been filed, if it appears to the regional director that formal proceedings in respect thereto should be instituted, he shall issue and cause to be served on all the other parties a formal complaint in the name of the Board stating the unfair labor practices and containing a notice of hearing before an administrative law judge at a place therein fixed and at a time not less than 14 days after the service of the complaint." 29 C.F.R. § 102.15. In this case, the relevant regional director was Ronald K. Hooks, Director of Region 19 in Seattle.

Under the Board's rules, the *receipt* of that timely motion vested the Board with jurisdiction over the dispute:

> *Upon receipt of the motion*, the Board may deny the motion or issue a Notice to Show Cause why the motion may not be granted. If a Notice to Show Cause is issued, the hearing, if scheduled, will normally be postponed indefinitely. . . . The Board in its discretion may deny the motion where the motion itself fails to establish the absence of a genuine issue, or where the opposing party's pleadings, opposition and/or response indicate on their face that a genuine issue may exist.

*Ibid.* (emphasis added).

On February 24, 2021—more than three weeks after UNFI timely filed its motion for summary judgment—the regional director purported to withdraw the complaint. The regional director explained: "Having had the opportunity to review the allegations in the Consolidated Complaint, as well as having afforded the Division of Advice and Region 19 a chance to re-examine the allegations, the Acting General Counsel, pursuant to his prosecutorial discretion, does not wish to continue the prosecution of Case 19-CB250856." ROA.270. Accordingly, the regional director ordered that his previous complaint "is withdrawn and the underlying Charge in Case 19-CB-250856 is dismissed." *Ibid.* The regional director cited no other authority for his decision to withdraw the complaint and dismiss UNFI's charge.

Pursuant to the Board's rules, UNFI timely filed a request for "special permission to appeal" the regional director's decision to the NLRB. *See* 29 C.F.R. § 102.26. On May 21, 2021, the Board issued its final decision. The Board stated that the regional director's decision terminating the case could *not* be appealed to the NLRB. *Ibid.* Rather, according to the NLRB, the regional director's decision could *only* be appealed to the Acting General Counsel. *See* 29 C.F.R. § 102.19. The Board did not explain how such an

appeal to the Acting General Counsel could be anything more than an empty formalism given that the Acting General Counsel directed the regional director to dismiss the case in the first place.

UNFI timely petitioned our court for review of the NLRB's May 21 order. I agree with the majority that the order is reviewable under 29 U.S.C. § 160(f).

## II.

The majority and I part company, however, on the lawfulness of the Board's May 21 order. In my view, the Board violated the plain text of the Labor Management Relations Act ("LMRA").

In the LMRA, Congress authorized the Board to make "such rules and regulations as may be necessary to carry out the provisions of this subchapter." 29 U.S.C. § 156. "[T]he provisions of this subchapter," in turn, direct the NLRB to follow certain statutory procedures in combatting unfair labor practices. Thus, the NLRB has discretion to adopt rules—but here, as in all areas of administrative law, they must comport with Congress's commands. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018).

Two of those commands resolve this case. Both appear in 29 U.S.C. § 160(b). That statutory section is one paragraph of unstructured text spanning 325 words. For ease of reference, I'll refer to the two relevant statutory commands by their sentence numbers.

Start with § 160(b)'s first sentence. It provides:

Whenever [a] it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or [b] any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person [c] a complaint stating the charges in that respect, and containing [d] a notice of hearing before the Board or a member

thereof, or before a designated agent or agency, at a place
therein fixed, not less than five days after the serving of said
complaint.

29 U.S.C. § 160(b). The NLRB complied with all of the bracketed
requirements in § 160(b)'s first sentence: [a] the Board received an unfair
labor practice charge from UNFI; [b] the Board designated the regional
director as its agent, *see* 29 C.F.R. § 102.15; [c] the regional director filed a
complaint; and [d] the complaint noticed a hearing. So far, so good.

The second relevant statutory command appears in the fifth and final
sentence of § 160(b). It provides:

> Any such proceeding shall, so far as practicable, be conducted
> in accordance with the rules of evidence applicable in the
> district courts of the United States *under the rules of civil
> procedure for the district courts of the United States*, adopted by
> the Supreme Court of the United States pursuant to section
> 2072 of title 28.

29 U.S.C. § 160(b) (emphasis added). In accordance with this command, the
Board adopted a summary judgment standard that mirrors Rule 56. *Compare*
29 C.F.R. § 102.24(b) (requiring denial of summary judgment "where the
motion itself fails to establish the absence of a genuine issue, or where the
opposing party's pleadings, opposition and/or response indicate on their face
that a genuine issue may exist"), *with* FED. R. CIV. P. 56(a) ("The court
shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a
matter of law."). Again, so far, so good.

The Federal Rules governing summary judgment require more,
however. Take for example Federal Rule of Civil Procedure 41. It allows a
plaintiff to dismiss his action without a court order—but *only* when the
plaintiff does so "before the opposing party serves either an answer or a

motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i). Before the Supreme Court adopted Rule 41, the preexisting rules allowed a "plaintiff to dismiss the action up to various points in the proceeding, ranging from before issue had been joined, before the trial began, before the case was submitted to the jury, to before the verdict was returned." 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2363 (4th ed.). This led to a variety of "abuses" that "Rule 41(a)(1) was designed to curb." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990). "The theory underlying [Rule 41(a)(1)'s] limitation is that, after the defendant has become actively engaged in the defense of a suit, he is entitled to have the case adjudicated and it cannot, therefore, be terminated without either his consent, permission of the court, or a dismissal with prejudice that assures him against the renewal of hostilities." *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979).

In this case, however, the NLRB violated Rule 41. The Board itself conceded that UNFI timely filed its summary judgment motion. Under Rule 41(a)(1)(A)(i), that cut off the unilateral right to dismiss the complaint. While the fifth sentence of § 160(b) requires the Board to follow the Federal Rules "so far as practicable," the Board never claimed that following Rule 41 would be impracticable. Thus, the Board erred as a matter of law.

### III.

In response, the NLRB does not *even cite* Rule 41. *Cf.* UNFI Blue Br. 26–28 (relying on Rule 41). Nor does the NLRB even cite § 160(b)—much less does it explain how or why it was not practicable to follow the commands laid down by Congress and the Federal Rules. *Cf.* UNFI Blue Br. 27 (arguing the Board must explain why it deviates from Federal Rules). These are extraordinary forfeitures. And I'd hold the Board to them.

The Board instead offers three counterarguments. None has merit.

## A.

First, the Board says the regional director had unilateral and "unreviewable" prosecutorial discretion to withdraw the complaint. True, the NLRB's regulations provide: "A complaint may be withdrawn before the hearing by the Regional Director on the Director's own motion." 29 C.F.R. § 102.18. But all that says is the regional director can *move* to withdraw the complaint. And that's consistent with Federal Rule of Civil Procedure 41; after the defendant files an answer or a motion for summary judgment, the complaint may be withdrawn on the plaintiff's motion—*when granted by the district court*, of course. *See, e.g.*, *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1274 (5th Cir. 1990) ("Rule 41(a)(2) of the Federal Rules of Civil Procedure allows plaintiffs to freely dismiss their suits, subject to court approval, provided the dismissal does not prejudice any party. The district court may attach conditions to the dismissal to prevent prejudice." (citations omitted)).

In this case, however, the NLRB urges us to ignore text it wrote by adding certain words and deleting others. Specifically, the Board would read § 102.18 to say: "A complaint may be withdrawn before the hearing by the Regional Director <u>in his unilateral and unreviewable discretion</u> ~~on the Director's own motion~~." That regulation would at least purport to give the regional director unilateral discretion to dismiss a complaint before a hearing. But it's well established that we cannot render surplusage the text adopted by an agency or allow an agency to otherwise ignore the limitations imposed in its rules. *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) ("[T]he Government should turn square corners in dealing with the people." (quotation omitted)).

26

Nor can the Board pretend that "on the Director's own motion" is code for "his unilateral and unreviewable discretion" to act "sua sponte." True, we've previously used the phrase "on its own motion" to refer to a *district court's* discretionary and *sua sponte* powers. *See, e.g.*, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984) ("[A] district court may dismiss a complaint on its own motion for failure to state a claim."). Of course, the Federal Rules—which are all that matter under the fifth sentence of 29 U.S.C. § 160(b)—do not speak that way. The Federal Rules repeatedly and conspicuously differentiate between things that can be done on *a party's* "motion" or in the district court's discretion *without* the word "motion." *See, e.g.*, Fed. R. Civ. P. 12(f), 21, 26(b)(2)(C), 26(g)(3), 56(f). And in any event, even when a district court can act on its own, the court's decision remains bound by the Rules and reviewable on appeal.

And even if all of that's wrong, the colloquial phrase "on its own motion" when used to refer to courts' *sua sponte adjudicatory* powers cannot possibly be used to refer to the regional director's *prosecutorial* powers. The entirety of the NLRB's position in this case is that when the regional director (acting on his own or at direction of the general counsel) chooses to dismiss a complaint, it's a prosecutorial not an adjudicatory act. Were it adjudicatory, the NLRB concedes, UNFI would have a right to challenge it. So it would prove far too much—and would undo the Board's entire case—if § 102.18's use of the phrase "on its own motion" gave the regional director court-like *adjudicatory* powers.

## B.

Second, the Board says the regional director dismissed the complaint "prior to the Board transferring the complaint to itself." The NLRB's brief on this point is far from pellucid. But the argument appears to go something like this. If the Board determines that summary judgment is appropriate, it

will issue a "Notice to Show Cause" under 29 C.F.R. § 102.24(b) and then transfer the case to itself under 29 C.F.R. § 102.50 before granting the motion. It's at that point, and only that point the NLRB contends, that the regional director loses his power to dismiss a complaint. On the Board's telling, these two orders—the Show Cause order under § 102.24(b) and the transfer order under § 102.50—are acts of jurisdictional significance: They terminate the regional director's prosecutorial discretion and begin the Board's hearing. It necessarily follows, the Board concludes, that before these two jurisdictionally significant orders are entered, the regional director can do whatever he wants.

All of this is a red herring because the text of the relevant regulations says no such thing. Start with § 102.24. It provides that motions for summary judgment filed before a hearing must be filed with the Board itself, while summary judgment motions filed at the hearing must be filed before the ALJ. *See* 29 C.F.R. § 102.24(a). This makes some sense. After all, before the ALJ convenes the hearing, he or she is not present to receive the motion—so that role is served by the Board as a backstop. Then, for motions filed with the Board before the hearing, the Board has a choice: "Upon receipt of the motion [for summary judgment], the Board may deny the motion or issue a Notice to Show Cause why the motion may not be granted." *Id.* § 102.24(b). Section 102.24(b) says absolutely nothing about entering a transfer order under § 102.50. It simply says that the Board can act on motions for summary judgment that are filed with it before the hearing and before the ALJ steps in to adjudicate the case.

So what about § 102.50? It says nary one word about summary judgment. It simply authorizes the Board to transfer cases to itself, or to one of its members, rather than leave them with ALJs. It does not require the Board to enter transfer orders before granting summary judgment. It does not suggest § 102.50 orders are jurisdictionally significant. It says nothing at all

about the commencement of a hearing. And it says nothing at all about regional directors or the general counsel. It just allows the Board to transfer cases away from ALJs to "effectuate the purposes of the Act or to avoid unnecessary costs or delay." *Ibid.*

If an administrative agency could reimagine its regulatory text in the way the Board asks in this case, there would be no limit whatsoever to an agency's power to whipsaw regulated entities. The agency could pass a regulation that says "we'll do good stuff and nice things." *Cf.* Gary Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327, 339–40 (2002) (describing consequences of congressional enactment that requires "'goodness and niceness'"). Then, in the heat of a contested proceeding, the agency could say its understanding of "good stuff and nice things" means its disfavored party is jurisdictionally barred—not just that it loses but that it cannot even seek review of the agency's capriciousness. That has never been the law.

Finally, suppose § 102.24(a) and § 102.50 said the things the Board imagines them to. *E.g.*, assume they automated transfers to the Board after a Show Cause order and clearly addressed the roles of both the general counsel and the Board after a party's summary judgment motion. Those hypothesized facts would have no bearing on this case.

That's because Congress—and only Congress—can promulgate jurisdictional rules. *See, e.g.*, *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm.*, 558 U.S. 67, 83–85 (2009) (holding administrative agency cannot adopt "jurisdictional" rules absent direct statutory authorization). Thus, Judge Sutton has explained that "an agency cannot contract its power to hear claims that fall plainly within its statutory jurisdiction." *Pruidze v. Holder*, 632 F.3d 234, 240 (6th Cir. 2011). Thus, absent a jurisdictional statute enacted by Congress, the Board cannot

"assume[] authority to interpret [its] regulation as a jurisdictional rule." *Id.* at 238. And the NLRB points to no statute enacted by Congress that would empower it to make jurisdictional regulations (again, even assuming that § 102.24(a) and § 102.50 purport to speak in jurisdictional terms, which they plainly do not).

In short, § 102.24(a) and § 102.50 are far from jurisdictionally determinative. They're completely irrelevant.

## C.

Third, the Board relies heavily on *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112 (1987) ("*UFCW*"). In that case, the general counsel filed a complaint against grocery store owners. Shortly before the hearing, and before either party filed for summary judgment, the general counsel informally settled with the owners. The union petitioned for review of that informal settlement. Relying heavily on the LMRA's legislative history, *see id.* at 124–26, the Court held that Congress intended to distinguish "prosecutorial" actions (which are not reviewable in federal court) from "adjudicatory" actions (which are). It emphasized that Board actions falling on the adjudicatory side of the line *are* reviewable: "the resolution of contested unfair labor practice cases is adjudicatory." *Id.* at 125. But so long as there's no evidence that the Board or its agents adjudicated the case, then the general counsel retains prosecutorial discretion to informally settle a case before the hearing begins: "We hold that it is a reasonable construction of the [National Labor Relations Act, as amended by the LMRA] to find that until the hearing begins, settlement or dismissal determinations are prosecutorial." *Id.* at 125–26. And purely prosecutorial decisions are not reviewable in federal court under either the LMRA, *see id.* at 127, or the Administrative Procedure Act, *see id.* at 130–33.

*UFCW* is easily distinguishable. While no party moved for summary judgment there, *both* parties so moved here. The general counsel looked at those motions, weighed them on the merits, and sided with the union. That's a quintessential adjudication. Yet on the Board's telling, it can receive cross-motions for summary judgment, refer those to a "prosecutor"-*cum*-adjudicator like the general counsel, allow or direct the general counsel to side with the defendant, allow or direct the general counsel to withdraw the complaint, and then insulate the entire adjudicatory process as an exercise of "prosecutorial discretion."

It also bears emphasis that *UFCW* must be understood in light of the Supreme Court's more recent administrative law decisions. The Supreme Court has directed us to look at regulations—and in particular agencies' litigation-based reimaginations of their regulations—through a different lens. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *id.* at 2432–37, 2447–48 (Gorsuch, J., concurring in the judgment). And the NLRB's litigation positions in this case—shifting between its regulations, invoking regulations that are plainly irrelevant, and pretending that its "Show Cause" orders are something they are not—warrant no deference. *See id.* at 2417 (majority opinion) (denying deference to shifting agency positions that appear to be "convenient litigating position[s]" and "post hoc rationalization[s]" (quotation omitted)). Nor can the NLRB explain how its treatment of UNFI reflects the Board's "substantive expertise" rather than its caprice. *Ibid.* Even if those problems were not dispositive, the NLRB does not articulate why a question of litigation procedure wouldn't "fall more naturally into a judge's bailiwick." *Ibid.* And that's especially true here, where Congress specifically directed the Board to follow the Federal Rules that sit at the epicenter of judicial expertise.

No. 21-60532

IV.

The majority offers several responses. The first is unfortunate and meritless. The others are just meritless.

A.

The majority first accuses of me of acting "improper[ly]" by "cross[ing] the bench to counsel's table and litigat[ing] the case." *Ante*, at 15. Such rhetoric is unfortunate. It's also misplaced.

Let's start where the majority does, with the Supreme Court's opinion in *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). The majority interprets that case to preclude us from "bas[ing] our holding" in anything not excerpted from a party's brief. *Ante*, at 15. But that's not remotely what *Sineneng-Smith* said.

In *Sineneng-Smith*, the Supreme Court reversed the Ninth Circuit's decision to "sally forth each day looking for wrongs to right." 140 S. Ct. at 1579 (quotation omitted). More specifically, the Supreme Court reversed after the Ninth Circuit invited three non-parties to brief and orally argue questions not raised by the appellant and then awarded relief that no party had asked for. *Id.* at 1581. When it rejected "the [Ninth Circuit] panel's takeover of the appeal," the Supreme Court made clear why. *Ibid.* The Court didn't reverse because the Ninth Circuit was too thoughtful in its treatment of a party's question presented. Rather, the Court reversed because the Ninth Circuit itself presented questions that no party wanted to present. *See id.* at 1575 (indicating courts should "decide only questions presented by the parties" (quotation omitted)); *id.* at 1579 (indicating courts are assigned "the role of neutral arbiter of matters the parties present" (quotation omitted)); *id.* at 1582 (remanding for reconsideration "shorn of the overbreadth inquiry interjected by the appellate panel.").

The Supreme Court's focus in *Sineneng-Smith* on questions presented, not arguments, reflects older traditions in our law. After all, we decide only "Cases" or "Controversies," brought to us via the questions a party presents. *See* U.S. CONST. art. III, § 2. But once a live question reaches us, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). That's presumably why the Court went out of its way to note in *Sineneng-Smith* that "the party presentation principle is supple" and "*a court is not hidebound by the precise arguments of counsel.*" 140 S. Ct. at 1579, 1581 (emphasis added). That comports with the centuries-old principle that parties cannot by agreement, error, or omission decide a question of law. *See Marbury*, 5 U.S. at 177; *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 290 (1917) ("No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court."); *NASA v. Fed. Lab. Rels. Auth.*, 527 U.S. 229, 245 n.9 (1999) (discussing "the rule that litigants cannot bind us to an erroneous interpretation of federal legislation"); *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) ("Concession of a point on appeal by respondent is by no means dispositive."); *Equitable Life Assurance v. MacGill*, 551 F.2d 978, 983 (5th Cir. 1977) ("[I]t is well settled that a court is not bound to accept as controlling stipulations as to questions of law.").

It follows from all of this—hundreds of years of precedent and *Sineneng-Smith*—that we're allowed to read the law and apply it to the parties' dispute according to our best judgment. We're not 1L moot court judges who're artificially bound by the eight corners of the parties' two briefs. Does anyone think that, when a party presents legal question X for decision in federal court, a federal judge is somehow disabled from reading any case, statute, regulation, or other authority not cited in the party's brief?

No. 21-60532

Of course not. We are duty-bound to understand the legal questions presented to us—*even* when a party presents a question less than perfectly. That duty isn't new: for centuries, judges have relied on their best understanding of the law, and not solely on counsel, to decide questions put before them. *See* Harold J. Berman & Charles J. Reid, Jr., *The Transformation of English Legal Science: From Hale to Blackstone*, 45 Emory L.J. 437, 468–70, 485–95 (1996); *see also* Charles E. Clark, *History, Systems and Functions of Pleading*, 11 Va. L. Rev. 517, 518 (1925) (noting that common-law pleading emphasizes the "issue formulating function."). The majority's contrary understanding of *Sineneng-Smith* has no basis in Supreme Court precedent or broader principles of Anglo-American law.

In any event, the majority's accusation is an odd one because UNFI *certainly did* raise Rule 41. It did so on pages 26 and 27 of its brief, as you can see for yourself in the margin.[2] We discussed the point at oral argument. Nearly the entire case concerns whether the general counsel can withdraw a complaint after the parties cross-file summary judgment motions. I'm flattered that the majority would attribute the point to me. But UNFI deserves the credit.

---

[2] "Finally, the Board's failure to engage in reasoned decision-making is under-scored by the fact that the Board has chosen to rely on civil litigation concepts (like summary judgment motions) that have well-understood consequences in our legal system. As noted above, the Board applies the same standard to summary judgment motions as the Federal Rules of Civil Procedure, and the Board gives meritorious motions the same effect: judgment as a matter of law. *In ordinary civil litigation, however, a plaintiff's ability to unilaterally dismiss its complaint ends if another party moves for summary judgment. See FED. R. CIV. P. 41(a)(1)(i). So, the Board would need to provide some reasoned justification if it wanted to incorporate ordinary summary judgment concepts from federal civil litigation but treat the effect of a summary judgment motion in an entirely different way.*" Blue Br. 26–27 (emphasis added). What more, precisely, was UNFI required to say?

No. 21-60532

B.

Aside from party presentation, the majority offers four substantive rejoinders. None have merit.

First, the majority offers the strawman that the NLRB need not "incorporate[] *the entire* Federal Rules of Civil Procedure into Board proceedings." *Ante*, at 15 (emphasis added). That's both true and irrelevant. I'm not suggesting the NLRB must incorporate the *entirety* of the Federal Rules, nor am I even suggesting it must incorporate *any* of the Federal Rules. What Congress said is that the NLRB must incorporate those Rules *as far as is practicable*. *See* 29 U.S.C. § 160(b); *accord NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 475 (2nd Cir. 2009). The NLRB is obviously free to explain why it chose not to follow this, that, or every Federal Rule. But what it's not free to do is to say it's following the Federal Rules and then deviate from them without explanation.

Second, the majority asserts that 29 C.F.R. § 102.18, allowing the Regional Director to move to withdraw a complaint, "would be meaningless" if the Board had to follow Rule 41. *Ante*, at 17. That may or may not be true but either way, again, it's irrelevant. The agency's *regulation* cannot trump Congress's *statute* requiring the agency to conform its procedure to the FRCP or else to explain why such conformance isn't practicable. *See* 29 U.S.C. § 160(b). Further, as explained above, my view does not render 29 C.F.R. § 102.18 meaningless. That regulation allows the regional director to *move* to withdraw a complaint—just as Rule 41 does. Neither purports to give the regional director unreviewable discretion to dismiss a complaint after summary-judgment proceedings have started.

Third, the majority contends that holding the NLRB to § 160(b) would allow a party, wishing to avoid settlement of their complaint by the general counsel, to "race[] to file a summary judgment motion" and thus

circumvent the general counsel's authority. *Ante*, at 17. But no one raced to file anything. *Both* UNFI *and* the unions filed motions for summary judgment on the day before such motions were due. There's zero evidence that anyone was racing to avoid any settlement of anything. The MSJs were filed and ready for disposition in the ordinary course before the general counsel usurped the Board's adjudicatory power and deprived UNFI of a Board decision. If there's potential for abuse in other cases not before us, that's perhaps a matter for the Board to consider in future regulations. Or for future courts to consider in future cases. But it has zero bearing on the actual controversy before us.

Fourth, the majority contends that I am "confused" about Rule 41. *Ante*, at 16 n.10. The majority notes that in NLRB procedure, UNFI is technically not the prosecuting party. That's because, in the fictional separation of powers arrangement contained within the NLRB, the general counsel "prosecutes" the claim on UNFI's behalf. So, the majority says, the general counsel can file a "notice of dismissal" regardless of UNFI's summary judgment motion, because the general counsel opposes the unions—not UNFI. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

This contention is particularly head-scratching. The general counsel obviously "opposes" UNFI; that's why the general counsel decided to dismiss the complaint without explanation. But even if the majority were right that the general counsel opposes the unions (not UNFI), the unions *also* filed a motion for summary judgment. That meant that at minimum, *some* stipulation between *someone* and the general counsel was required by Rule 41(a)(1)(A)(ii). Further, this theory does nothing to dispose of the majority's broader problem: by allowing the general counsel to dispose of meritorious complaints without explanation, the majority affords him forbidden "adjudicatory" powers and effectively permits the Board to capriciously use

him as the cat's paw. *See UFCW*, 108 S. Ct. at 130; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

\*     \*     \*

Finally, a word about the scope of the NLRB's arguments in this case. The Board repeatedly and adamantly invokes the phrase "prosecutorial discretion" as a mantra. It appears to think that phrase operates as a magical invisibility cloak, a shroud that makes the Board's decisions disappear behind a gauzy veil of unreviewability. Our courts, and others across the country, have seen such arguments with increasing frequency in recent years. *See, e.g.*, *Regents*, 140 S. Ct. at 1906–07 (rejecting Government's invocation of "prosecutorial discretion"); *Texas v. United States*, 809 F.3d 134, 163–70 (5th Cir. 2015) (same), *aff'd by equally divided court*, 579 U.S. 147 (per curiam) (mem.); *Citizens for Resp. & Ethics in Washington v. FEC*, 55 F.4th 918, 929 (D.C. Cir. 2022) (en banc) (Millett, J., dissenting) ("To begin with, affixing a brief invocation of prosecutorial discretion to lengthy substantive analyses in statements of reasons has become commonplace in Commission proceedings. This court errs in allowing those brief invocations to broadly insulate dismissal decisions from judicial review."). Unchecked, such invocations of "prosecutorial discretion" distort the rule of law. We should have seen through the Board's machinations in this case. I respectfully dissent.